IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GREATER NEW YORK MUTUAL INSURANCE COMPANY et al., | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:25-cv-01715-PX |
| | * | |
| HEATHER HILL PROPERTY COMPANY LLC, | * | |
| Defendant. | | |
| | *** | |

**<u>MEMORANDUM OPINION</u>**

Pending in this insurance coverage dispute is a partial motion to dismiss three counterclaims that Plaintiff Heather Hill Property Company LLC ("Heather Hill") has lodged against its insurers GNY Mutual Insurance Company and Strathmore Insurance Company ("GNY").  ECF No. 27.  The issues are fully briefed, and no hearing is necessary.  *See* Loc. R. 105.6.  For the following reasons, the motion is GRANTED in part and DENIED in part.

**I.    Background**

Between 2022 and 2024, GNY issued a commercial general liability policy (the "Policy")[1] to Heather Hill for coverage concerning many of its properties, including an apartment building located in Temple Hills, Maryland.  ECF No. 1 ¶ 11; ECF No. 22 at 17.  On November 14, 2024, the Maryland Office of the Attorney General ("OAG") brought an enforcement action against Heather Hill for operating the Temple Hills apartment building without required licenses; engaging in "unfair, deceptive and abusive trade practices"; and violating numerous provisions of the housing and fire codes (the "enforcement action").  ECF No. 22 at 17–18; ECF No. 1-4 ¶¶ 38, 64,

---

[1] The parties agree that the Policy did not change materially from year to year and they rely on the 2024 version at ECF No. 22-1.  ECF No. 22 at 17; ECF No. 27-1 at 6, n.1.

1

81.   Regarding alleged code violations, the enforcement action averred a panoply of unsafe and unsanitary living conditions.   The tenants were said to live amid mold, water leaks, rodent infestation and peeling paint.  ECF No. 1-4 ¶ 38.  Some tenants allegedly lived in units "infested with bats, rodents and vermin," with "water leaks and unsanitary walls, ceilings and floors," and lacking "basic utilities, among other things."  *Id.* at 4.  The enforcement action also alleged that Heather Hill misrepresented to its tenants that the apartment building had passed necessary inspections and had complied with housing codes.  *Id.* ¶ 85.  As a result, conditions became so bad that one of the units had been declared "uninhabitable," which required the tenants to vacate the premises.  *Id.* ¶ 94.  OAG also sought to recover from Heather Hill nonspecific "economic damages" and "other and further relief as is appropriate and necessary."  *Id.* ¶ 100.

Heather Hill and OAG ultimately settled the enforcement action on September 3, 2025 ("OAG Settlement").  ECF No. 22-1 at 381.  The OAG Settlement compels Heather Hill to obtain and maintain proper licensing, not act as a debt collector without proper licensing, not lie to its tenants, and not charge excessive late fees.  *Id.* at 387–89.  Heather Hill must also pay $2,750,000 in restitution to tenants as reimbursement of rents collected without proper licensure.  *Id.* at 390–96.

Separately, tenants brought individual and class complaints against Heather Hill for personal injuries sustained while in the Temple Hills apartment building.  ECF No. 22 at 20–23.  Those suits are still pending.

On May 30, 2025, GNY initiated this suit under the Declaratory Judgement Act, 28 U.S.C. § 2201, asking the Court to declare in part that GNY bears neither a duty to indemnify nor defend Heather Hill in the enforcement action.  ECF No. 1.  Heather Hill, in turn, answered and counterclaimed, averring essentially the opposite, that the Policy plainly provides indemnification

and requires defense.  ECF No. 22.

GNY now moves to dismiss the counterclaims concerning only the enforcement action (I, II, and V).  ECF No. 27.  GNY particularly argues that because the plain and unambiguous language of the Policy does not cover an enforcement suit, Heather Hill's counterclaims seeking any coverage must fail.  For the following reasons, the Court grants dismissal of the indemnity counterclaim (Count V) and denies dismissal of those concerning GNY's duty to defend (Counts I and II).[2]

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the counterclaims.  *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court must accept "the well-pled allegations of the [counterclaims] as true" and most favorably to the nonmovant.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the [counterclaim's] allegations are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted).  The Court, however, need not credit naked legal conclusions devoid of factual support.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## III.    Analysis

### A.    The Duty to Defend

GNY first argues that the declaratory relief and breach of contract claims concerning any

---

[2] Heather Hill separately moves for leave to file a surreply.  ECF No. 33.  Surreplies are disfavored in this District, customarily permitted only to "contest matters presented to the court for the first time in the opposing party's reply." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003)).  The problem for Heather Hill is that GNY made no new arguments, and it is instead Heather Hill who seems to insert a novel "waiver" contention.  Nor does the surreply, even if accepted, alter the analysis.  Accordingly, the motion is denied.

duty to defend must be dismissed.  ECF No. 27-1 at 11.  A duty to defend is triggered where the plain language of the insurance policy "potentially" covers the damages that are the subject of the underlying action.  *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193 (1981).[3]  Success in the underlying claim is not necessary; if an action filed against the insured is "potentially covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be," the insurer bears a duty to defend.  *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643 (1996) (citing 7C John Alan Appleman, INSURANCE LAW AND PRACTICE § 4686, at 172 (Berdal ed. 1979)). Further, if any single claim in the underlying suit would potentially trigger coverage, the insurer must defend.  *Utica Mut. Ins. Co. v. Miller*, 130 Md. App. 373, 383 (Ct. Spec. App. 2000) (internal citations omitted).

By its plain and unambiguous terms, the Policy covers "'bodily injury' or 'property damage' to which this insurance applies."  ECF No. 22-1 at 204, 212.  On the scope of coverage, the Policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

*Id.* at 212.  "Bodily injury" includes "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  *Id.* at 224.  And "property damage" is "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."  *Id.* at 226.

---

[3] The parties agree that under the principle of *renvoi*, Maryland substantive law applies because while Heather Hill is based in Connecticut, the insured property is located in Maryland, and Connecticut would apply Maryland law. ECF No. 27-1 at 6; ECF No. 28-1 at 4; *see Am. Motorists Ins. Co. v. ARTRA Gr., Inc.*, 338 Md. 560, 574 (1995); *Gen. Acc. Ins. Co. v. Mortara*, 314 Conn. 339, 346 (2014).

When reading the counterclaims most favorably to Heather Hill, the enforcement action plausibly triggers GNY's duty to defend. The enforcement action alleges that Heather Hill placed tenants in uninhabitable living conditions that conceivably could lead to the tenants' personal injury or property damage. Failure to comply with safety codes that led to the effective condemnation of a building is, by itself, enough to envision how tenants' bodily injury and property damage could be implicated. This, combined with OAG's broad prayer for relief, at least renders plausible that Heather Hill could be found responsible for damages arising from either bodily injury of its tenants on the premises or damage to the tenants' personal property. This is especially so when considering that the Policy excludes from coverage only the "damage" to property that Heather Hill "own[s], rent[s], or occup[ies]," as opposed to the property of third parties such as tenants. *Id.* at 215.

In response, GNY presses that Heather Hill abandoned any contention that the duty to defend is triggered by third-party property damage. ECF No. 31 at 3. The Court disagrees. Heather Hill has always maintained that it faced potential "economic damages" arising from allegations of personal property damage. ECF No. 28-1 at 15. More to the point, the question for the Court at the dismissal stage is whether the counterclaim is made plausible. On this, and when reading the allegations most favorably to Heather Hill, the Court must agree that the duty to defend is adequately pleaded.

Nor does it matter whether such potential "economic" damages are framed as "restitution" or otherwise. *Compare* ECF No. 27-1 at 12–14, *with* ECF No. 28-1 at 16–19. Whether, in the end, the enforcement action successfully extracts damages based on bodily injury or property damage does not dictate whether GNY must defend Heather Hill. *See Brohawn v. Transam. Ins. Co.*, 276 Md. 396, 409 (1975) (quoting *Burd v. Sussex Mut. Ins. Co.*, 56 N.J. 383, 389 (1970)). If

the enforcement action could trigger such damages, "no matter how attenuated, frivolous, or illogical that allegation may be," then the insurance company must defend. *Sheets*, 342 Md. at 643 (citing 7C John Alan Appleman, INSURANCE LAW AND PRACTICE § 4686, at 172). Thus, Heather Hill has plausibly stated a claim premised on GNY's duty to defend Heather Hill in the enforcement action. The counterclaims (Count I and II) will not be dismissed.[4]

### B.      The Duty to Indemnify

The duty to indemnify compels a different result. Heather Hill seeks indemnification for the restitution it agreed to pay under the OAG Settlement. ECF No. 22 at 34–35. It argues that because those sums are "monetary payments" that "may therefore reduce" GNY's potential liability for indemnification in the tenant suits, they are covered sums. *Id.* Plainly, however, an insurer only has a duty to indemnify payments subject to coverage under its operative insurance policy. *See Perdue Farms, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006). But no rational reading of the Policy allows for coverage of the restitution payments. The OAG Settlement makes clear that the payments represent a return of rents that Heather Hill had demanded from tenants either in violation of consumer protection laws, or while Heather Hill had not been properly licensed. ECF No. 22-1 at 390–96. Those "sums," therefore, do not arise from "bodily injury," that is, "sickness or disease sustained by a person"; nor do they stem from "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." *Id.* at 224, 226; *see Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 275 F.3d 384, 388

---

[4] GNY separately contends in a footnote that the Court should dismiss the declaratory judgment claim premised on the duty to defend because the enforcement action "has ended such that nothing remains to defend." ECF No. 27-1 at 18, n.6. Heather Hill responds that the enforcement action did not settle in the traditional sense, given that OAG maintains enforcement and oversight authority into the foreseeable future. ECF No. 28-1 at 11, n.9. Although the Court may exercise discretion to dismiss a declaratory judgment claim when the relief is best afforded through breach of contract, dismissal on this basis here would be premature. *Cf. OneBeacon Ins. v. Metro Ready-Mix, Inc.*, 427 F. Supp. 2d 574, 575 (D. Md. 2006) (summarily dismissing declaratory judgment claim in insurance coverage dispute where underlying suit had clearly settled with each side fully dismissing claims).

(2001); *Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 385 (1999). Thus, coverage plainly does not extend to the OAG Settlement amounts.

Nor does the analysis change simply because some restitution sums may generally overlap with damages sought in the tenant suits. ECF No. 28-1 at 21. Even accepting that the restitution which Heather Hill must pay as part of the OAG Settlement may offset eventual "liability" in the tenant suits, this alone does not automatically trigger GNY's coverage duties. None of those payments derive from "bodily injury" or "property damage" and thus are not covered sums. Accordingly, because no reasonable reading of the Policy extends coverage to the payments arising from the OAG Settlement, the indemnification claim (Count V) is dismissed.

## IV.    Conclusion

Based on the foregoing, ECF No. 27 is GRANTED in part and DENIED in part. A separate order follows.

 

| | |
|---|---|
|    July 22, 2026 |    /s/ |
| Date | Paula Xinis |
| | United States District Judge |